**IN THE UNITED STATES DISTRICT COURT
FOR SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **TIFFANY HAMMOND and JAMES HAMMOND, as next friends on behalf of their minor son, R.W.H., and in their individual capacities,** ) ) ) ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| **vs.** ) | **Case No. 3:25-cv-01283-DWD** |
| ) | |
| **CAHOKIA UNIT SCHOOL DISTRICT #187 and ILLINOIS STATE BOARD OF EDUCATION,** ) ) ) ) | |
| ) | |
| **Defendants.** ) | |

<u>**MEMORANDUM & ORDER**</u>

**DUGAN, District Judge:**

On July 31, 2025, Plaintiffs, Tiffany Hammond and James Hammond (collectively "Parents"), individually and on behalf of their minor son, R.W.H. ("R.W.H.") (collectively "Plaintiffs"), and in their individual capacities, filed their Amended Complaint regarding disability discrimination against Defendant Cahokia Unit School District #187 ("Defendant") and Defendant Illinois State Board of Education ("ISBE") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act ("Section 504"), 29 U.S.C. § 794 *et seq.*, the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.*, and the Illinois Civil Rights Remedies Restoration Act, 775 ILCS 60/1 *et seq.*, seeking the reversal of a special education hearing decision made

by ISBE, as well as an award of monetary damages and attorney's fees and costs. Now before the Court is Defendant's Motion to Dismiss and Alternative Motion to Strike Plaintiffs' Amended Complaint. (Doc. 15). For the reasons detailed below, the Motion is **GRANTED IN PART** and **DENIED IN PART.**

## I.   BACKGROUND

### A. Termination of R.W.H.'s Speech-Language Services

R.W.H. is a six-year-old kindergarten student diagnosed with Speech and/or Language Impairment and Attention Deficit Hyperactivity Disorder. (Docs. 12, pg. 2; 22, pg. 9). In May 2023, Defendant found R.W.H. eligible for special education services. (Doc. 12, pg. 4). On May 15, 2023, Defendant and Parents participated in an Individualized Education Plan ("IEP") meeting, creating an IEP that provided R.W.H. with twenty minutes of speech-language services per week. (Docs. 12 pg. 4; 22, pgs. 9-10). On April 17, 2024, Defendant revised R.W.H.'s IEP to increase speech-language services to thirty minutes per week for the 2024-2025 school year. (Docs. 12, pg. 4; 22, pg. 10). On August 21, 2024, Defendant ceased providing speech-language services to R.W.H. without notice to Parents and without amending R.W.H.'s IEP. (Doc. 12, pg. 5). Parents did not learn R.W.H. was not receiving speech-language services until October 24, 2024, at parent-teacher conferences. (Doc. 12, pg. 5). Four days later, Parents sent an email to Defendant requesting a meeting to discuss the cessation of speech-language services, but that request was denied. (Doc. 12, pg. 5). On November 8, 2024, Parents filed a due process complaint with the ISBE on behalf of R.W.H. (Doc. 22, pg. 33). A week later, Parents

received a certified letter from Interim Director of Special Education Kelly Richards, who explained that staffing shortages at District 187 resulted in a cessation of speech therapy services. (Doc. 12, pg. 6). Richards explained in the letter that Defendant would resume speech-language services when it concluded its hiring search for a new therapist. (Doc. 12, pg. 6). R.W.H. did not receive speech-language services until January 21, 2025, when Defendant initiated virtual speech therapy for R.W.H. for sixty minutes per week. (Docs. 12, pg. 7; 22, pg. 11). Defendant did not provide R.W.H. with the speech-language service minutes required by the April 2024 IEP for the twenty-one weeks between August 21, 2024, and January 21, 2025. (Doc. 22, pg. 10). Defendant did not hold an IEP meeting to address the changes to R.W.H.'s speech-language services nor did Defendant provide Parents with prior written notice of its proposed changes to R.W.H.'s speech-language services during this time. (Doc. 12, pg. 7).

## B. ISBE Proceeding

On November 8, 2024, Parents filed a due process complaint with the ISBE on behalf of R.W.H. (Doc. 12, pg. 6). On January 7, 2025, Parents filed a Charge of Discrimination with the IDHR on behalf of R.W.H. (Doc. 12, pgs. 6-7). On March 20, 2025, an independent hearing officer (IHO), appointed by ISBE, conducted a due process hearing remotely via Zoom. (Doc. 22, pg. 7). On April 1, 2025, the IHO entered her Final Determination and Order. (Doc. 22, pg. 24). That Order found R.W.H. did not receive the required speech-language service minutes due to a staffing shortage of speech language pathologists in the District. (Doc. 22 pg. 11). The Order further found that R.W.H. did not

require an additional thirty minutes per week of speech-language services above the sixty minutes per week provided by Defendant. (Doc. 22, pgs. 21-22). Plaintiffs have appealed the Order and made additional claims against Defendant. (Doc. 12).

## II.    JURISDICTION

This Court has federal question jurisdiction pursuant to 20 U.S.C. § 1415(i)(3),  28 U.S.C. § 1331 and § 1343, and 42 U.S.C. § 12133. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Plaintiffs request judicial review of the final decision by the IHO appointed by the ISBE. (Doc. 12, pgs. 13-14). Defendant argues this request should be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). (Doc. 16, pg. 3). Defendant argues Plaintiffs failed to timely file the Amended Complaint, naming ISBE as a party, within the deadline of 120 days from the date of the IHO's decision. (Doc. 16, pgs. 3-5).

The IDEA provides that a party aggrieved by the findings and decision of an IHO may bring a civil action within 90 days from the date of the IHO's decision, or, if the State has an explicit time limitation for bringing such action under the IDEA, in such time as the State allows. 20 U.S.C. § 1415(i)(2)(B). Article 14 of the Illinois School Code sets the deadline at "120 days after a copy of the decision of the impartial due process hearing officer is mailed to the party." 105 ILCS 5/14-8.02a(i). The IHO's final decision was issued on April 1, 2025. (Doc. 22, pg. 25). The 120-day period for appealing that decision began to run the next day on April 2, 2025. *See* 5 ILCS 70/1.11 ("The time within which any act

4

provided by law is to be done shall be computed by excluding the first day and including the last."). Thus, the 120-day period ended on July 31, 2025, that being the last day that falls within the statutory period. Plaintiffs filed their Amended Complaint, naming ISBE as a Defendant, on July 31, 2025. (Doc. 12, pgs. 1, 25).

Defendants also argue that because Plaintiffs did not serve ISBE until August 8, 2025, Count I should be dismissed for failure to timely request and serve the summons on ISBE. (Doc. 16 pg. 4-5). Defendants rely on Illinois' Administrative Review Act. Under the Administrative Review Act, service is mandatory but not jurisdictional. *See Palos Bank & Tr. Co. v. Illinois Prop. Tax Appeal Bd.*, 2015 IL App (1st) 143324, ¶ 26 (citing *Cox v. Bd. of Fire & Police Comm'rs of City of Danville*, 96 Ill. 2d 399, 404 (1983)). Further, Defendants do not point to any relevant statute or case law showing Article 14 of the School Code adopts the strict service requirements of the Administrative Review Act. (Doc. 16 pg. 4-5).

Because Plaintiffs filed the Complaint naming ISBE as a defendant within the statute of limitations pursuant to 105 ILCS 5/14-8.02a(i), and served ISBE eight days later, Defendant's Motion to Dismiss under 12(b)(1) is **DENIED**.

### III.    REQUEST FOR JUDGMENT ON THE PLEADINGS

#### A.  Standard

Rule 12(c) provides that "[a]fter the pleadings are closed - but early enough not to delay a trial - a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is designed to provide a means of disposing of cases when the material facts are not in

dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice." *Archer Daniels Midland Co. v. Burlington Ins. Co. Grp.*, 785 F. Supp. 2d 722, 726 (N.D. Ill. 2011). A motion for judgment on the pleadings under Rule 12(c) "is governed by the same standards as a motion to dismiss a failure to state a claim under Rule 12(b)(6)." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). When deciding a Rule 12(b)(6) motion to dismiss, the court accepts all of the well-pleaded factual allegations of the complaint as true, and draws all reasonable inferences in favor of the plaintiff. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true…state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion for judgment on the pleadings is also an appropriate vehicle for seeking dismissal of a claim based on an affirmative defense. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975–76 (7th Cir.2013). A plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). However, when the allegations of the complaint reveal that relief is barred, dismissal is appropriate. *Id*. Judgment entered for the movant on a motion for judgment on the pleadings is a final judgment on the merits. *See* Wright & Miller, Federal Practice & Procedure § 1369 (3d ed. 2025).

## B.  Associational Discrimination under the ADA

Parents claim they were discriminated against as R.W.H.'s parents in violation of the ADA and IHRA by Defendant's refusal to allow Parents to advocate for R.H.W. Defendants argue this claim is insufficient to establish liability for associational discrimination and that the Court should enter judgment on the pleadings for Defendants on both claims in accordance with Rule 12(c).

Parents allege Defendant violated Title II of the ADA by excluding Parents from the IEP process, ignoring Parents' repeated requests for a meeting, and failing to provide notice or convene meetings. (Docs. 12 pgs. 18-19; 23, pgs. 6-8). Title II of the ADA states that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a violation of Title II of the ADA, plaintiffs must prove they are a "qualified individual with a disability," and that they were denied "the benefits of the services, programs, or activities of a public entity" or otherwise subjected to discrimination by such an entity, and that the denial or discrimination was "by reason of" the disability. *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015). Other cases in the Seventh Circuit have recognized that parents may bring a discrimination by association claim under Title II of the ADA. *See, e.g. Hale v. Pace*, No. 9-cv-5131, 2011 WL 1303369, *1, 4 (N.D. Ill. Mar. 31, 2011); *Gross v. The Gap, Inc.*, No. 6-cv-3413, 2007 WL 1075029, *4-5 (N.D. Ill. Apr. 5, 2007).

7

### 1.  Zone of Interest

The Court first asks whether Parents' injuries fall within the zone of interests Congress sought to protect through the ADA. *Friends of Trumbull v. Chicago Bd. of Educ.*, 123 F. Supp. 3d 990, 995 (N.D. Ill. 2015). A statutory cause of action extends only to plaintiffs whose interests fall within the zone of interests protected by the law invoked. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014). Simply put, "a plaintiff must belong to the class of persons to whom the statute grants a right to sue." *Food & Drug Admin. v. R. J. Reynolds Vapor Co.*, 606 U.S. 226, 232 (2025). The zone-of-interests limitation always applies in statutory causes of action but certain statutes may protect a more expansive range of interests. *Lexmark Int'l, Inc.*, 572 U.S. at 129 (citing *Bennett v. Spear*, 520 U.S. 154, 164 (1997)). Whether a plaintiff falls within the "zone of interests" is an issue that requires courts to determine, using traditional tools of statutory interpretation, whether a legislatively conferred cause of action encompasses a particular plaintiff's claim. *Id.* at 127. The text of the ADA grants the right to relief to "any person alleging discrimination on the basis of disability." 42 U.S.C. § 12133 (incorporating by reference 29 U.S.C. § 794a). Because of its broad language, plaintiffs pleading under Title II of the ADA likely need only trace their alleged injury to any proscribed discrimination within that portion of the ADA. *See Access Living of Metro. Chicago v. Uber Techs., Inc.*, 958 F.3d 604 (7th Cir. 2020) (citing *Innovative Health Sys., Inc., v. City of White Plains*, 117 F.3d 37, 47 (2d Cir. 1997) (noting that the "broad language in [Title II's] enforcement provision

evinces a congressional intention to define standing to bring a private action…as broadly as is permitted by Article III of the Constitution")).

Here, Parents allege Defendant discriminated against them on the basis of their child's disability. (Doc. 12, pgs. 18-19, 23). Parents also allege a concrete and particularized injury under Article III by showing they were excluded from decisions regarding their child's education, and that Defendant refused to convene a meeting to discuss the cessation of speech services for their child. (Docs. 12, pgs. 5-6; 22, pg. 391). Because Parents plead an injury from discrimination based on their child's disability, they fall under the ADA's zone of interest.

### 2.   Separate and Direct Injury

To bring a claim for associational discrimination, Parents must "suffer some specific, separate, and direct injury as a result of [their] association with the disabled individual." *Hale*, 2011 WL 1303369 at *5 (internal quotations omitted). Plaintiffs must have been "discriminated against or singled out in a discriminatory way due to [their] association with disabled persons." *See id.* An "indirect" injury is not enough. *Id.*

Parents argue they suffered a direct injury when Defendant excluded Parents from decisions regarding their child's education and refused to convene a meeting to discuss R.W.H.'s ceased speech-language services. Defendant argues Parents' exclusion from the IEP process and participation in their child's education decisions is insufficient to establish liability for associational discrimination. (Doc. 16, pg. 6). Defendants argue

R.W.H. was denied services, not Parents, and that any advocation by Parents would be for R.W.H.'s sole benefit. (Doc. 16, pg. 6).

Parents' injury must be separate from the injuries R.W.H. suffered from the discontinuation of R.W.H.'s speech therapy services. *Zimny v. Geneva Cmty. Unit Sch. Dist. 304*, 718 F. Supp. 3d 766, 798 (N.D. Ill. 2024). In *Zimny*, the court found that a father's stress, frustration and mental anguish caused by the bullying of his son was an indirect injury. *See id.* The court reasoned Zimny was injured simply because his child was injured, so his injury did not stand alone. *See id.*

In the present case, Parents' interest in being involved in decisions regarding R.W.H.'s education is separate from R.W.H.'s interest in receiving a free appropriate public education. Parents have the right to direct the upbringing and education of their children. *See Meyer v. Nebraska*, 262 U.S. 390, 400 (1923); *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 534-35 (1925). Recently, the Supreme Court recognized the right of primary authority over a child's education includes the parent's right to participate in decisions regarding the child's mental health. *Mirabelli v. Bonta*, 607 U.S. ----, 146 S. Ct. 797, 803 (2026) (citing *Parham v. J. R.*, 442 U.S. 584, 602 (1979)). If parents have a right to participate in decisions regarding their child's mental health, it follows that parents have a right to participate in decisions regarding their child receiving adequate speech-language services. And, while this is not a Fourteenth Amendment case, the Court observes that the long line of cases recognizing parents' right to have primary authority over their children's education shows parents have a separate interest in being

10

involved in decisions regarding their children's education. In this case, Parents were seeking services from the school to obtain information on their child's education and speech services. As alleged, their injury of being denied that information, and meetings with Defendant, was not an indirect result of Defendant ceasing R.W.H.'s speech services but a direct result of Defendant's failure to include them in the decisions regarding their child's education.

This case is also different from *Simenson v. Hoffman*, No. 95-cv-1401, 1995 WL 631804 (N.D. Ill. Oct. 24, 1995). In *Simenson*, parents sued a medical center for associational discrimination after they were told by a doctor to leave with their disabled child. The court found the parents were "not at the medical center for any purpose other than to seek treatment for [their child.]" *Id.* at *7. In this case, Parents allegedly sought to be included in the decisions regarding their child's education for the purpose of being informed and to advocate for their child, not just to seek speech services for R.W.H. Accordingly, Parents' interest and injury is separate from R.W.H.'s injury. Plaintiffs have adequately alleged a claim of associational discrimination under the ADA.

Alternatively, Defendant requests a dismissal under Rule 12(b)(6). That request is denied because, under the same analysis, the Court concludes Plaintiffs pled a sufficient claim.

### C.  Associational Discrimination under the IHRA

Defendants argue Plaintiff's claim under the IHRA should also be dismissed under Rule 12(c).

The IHRA explicitly defines discrimination based on disability as including "unlawful discrimination against an individual based on the individual's association with a person with a disability." 775 ILCS 5/1-103. The IHRA expands that it is the public policy of Illinois "to secure for all individuals within Illinois the freedom from discrimination based on…physical or mental disability…[and] the availability of public accommodations, including in elementary, secondary, and higher education. 775 ILCS 5/1-102. The Supreme Court of Illinois has instructed courts that, as remedial legislation, the IHRA "must be liberally construed to achieve its purpose – here, the prevention of discrimination in public accommodations for all individuals." *M.U. By & Through Kelly U. v. Team Illinois Hockey Club, Inc.*, 2024 IL 128935 at ¶ 17. Based on the analysis above, and giving a liberal construction to the IHRA, Plaintiffs have adequately pled they were unlawfully discriminated against by Defendant based on their association with R.W.H.

## IV.    REQUEST FOR DISMISSAL FOR FAILURE TO STATE A CLAIM

### A.  Standard

A motion to dismiss for failure to state a claim serves to test the sufficiency of the complaint, viewed in the light most favorable to the plaintiff. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). Courts take as true all well-pleaded factual allegations and make all possible inferences from the allegations in the plaintiff's favor. *Roe v. Dettelbach*, 59 F.4th 255, 262 (7th Cir. 2023)(citing *AnchorBank, FSB,* 649 F.3d at 614). Courts do not decide the merits of the case but whether the complaint "contains enough facts to state a claim that is plausible on its face." *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*,

12

692 F.3d 580, 591 (7th Cir. 2012) (citing *Ashcroft,* 556 U.S. at 678). In deciding a motion to dismiss, courts are limited to the allegations in the pleadings but they may consider documents attached to or referenced in the pleadings if they are central to the claim. *Id.*

### B.  ADA, Section 504, and IHRA Claims

Both Title II of the ADA and Section 504 prohibit discrimination against disabled individuals. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 provides that "[n]o otherwise qualified individual with a disability…shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). For purposes of this case, the statutes are "functionally identical." *P.F. by A.F. v. Taylor*, 914 F.3d 467, 471 (7th Cir. 2019) (quoting *Wagoner*, 778 F.3d at 592).

To show a prima facie violation of either statute, Plaintiffs must show: (1) R.W.H. is a qualified individual with a disability; (2) R.W.H. was denied "the benefits of services, programs, or activities of a public entity or otherwise subjected to discrimination" by Defendant; and (3) that denial or discrimination was "by reason of his disability." *Hildreth v. Butler*, 960 F.3d 420, 430 (7th Cir. 2020) (quoting *Wagoner*, 778 F.3d at 592). A failure to make reasonable modifications in policies, practices, or procedures constitutes discrimination. *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 881 F.3d 587, 594 (7th Cir. 2018).

13

Plaintiffs do not have to establish bad faith or gross misjudgment. *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 345 (2025) (holding ADA and Rehabilitation Act claims regarding educational services are subject to same standard as other disability discrimination cases). Because Plaintiffs ask for compensatory damages, they must show deliberate indifference by showing Defendant "knew that harm to a federal protected right was substantially likely and failed to act." *Hildreth*, 960 F.3d at 430 (quoting *Lacy v. Cook Cty.*, 897 F.3d 847, 862 (7th Cir. 2018)) (cleaned up).

The Illinois courts analyze IHRA claims under "a framework that is practically indistinguishable from the ADA framework." *Tate v. Dart*, 51 F.4th 789, 793 (7th Cir. 2022) (citing *Fox v. Adams & Assocs., Inc.*, 445 Ill. Dec. 342 (2020)). Accordingly, the analysis applies to the IHRA, ADA, and Section 504 claims in equal force.

### 1. Disability Discrimination

The parties do not dispute R.W.H. is a qualified individual with a disability but they disagree over whether R.W.H. experienced discrimination because of his disability.

Plaintiffs argue Defendant discriminated against R.W.H. on the basis of his disability when Defendant unilaterally terminated his speech therapy services for 21 days without notice or an IEP meeting. (Doc. 23, pgs. 8-9). Plaintiffs argue Defendant failed to reasonably accommodate R.W.H.'s disability, denying him meaningful and equal access to Defendant's educational programs and services. (Doc. 12, pgs. 5, 14-15).

14

Defendant argues Plaintiffs cannot establish the temporary termination of speech therapy services was based on R.W.H.'s disability because any failure to provide these services was due to staffing shortages. (Doc. 16, pg. 8). Defendant argues that because it had no staff to provide speech therapy services to R.W.H., providing speech therapy was an unreasonable accommodation. (Doc. 16, pg. 8).

An accommodation is unreasonable if it imposes significant financial or administrative costs. *A.H. by Holzmueller* at 594 (citing *Oconomowoc Residential Programs v. City of Milwaukee*, 300 F.3d 775, 784 (7th Cir. 2002)). Accepting Plaintiffs' factual allegations as true, Defendant failed to provide speech-language services for 21 weeks as a result of systematic staffing shortages. (Doc. 12, pgs. 6, 10, 12). At the end of these 21 weeks, Defendant provided R.W.H. with virtual speech therapy services starting January 21, 2025. (Doc. 12, pg. 7). At this juncture, whether Defendant could have accommodated R.W.H. before January 2025, without incurring significant financial or administrative costs, is a factual dispute. A court deciding a motion to dismiss under Rule 12(b)(6) does not resolve factual disputes or the merits of a claim but decides whether a plaintiff has given enough details to state a claim that is plausible on its face. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (citing *Ashcroft*, 556 U.S. at 677). Plaintiffs pled that Defendant cancelled R.W.H.'s speech-therapy accommodations without notice and without consultation with Parents in August 2024. (Doc 12 pgs. 4-8). They also pled that Defendant refused to provide R.W.H. with speech-therapy accommodations for the next 21 weeks. (Doc 12, pgs. 4-8, 14-17). Plaintiffs pled these speech-therapy accommodations

15

had been offered the year prior and could be offered again without undue financial or administrative burden. (Doc. 12, pgs. 4-8, 15- 16). Finally, Plaintiffs have pled that the lack of speech-therapy accommodations deprived R.W.H. of an equal opportunity to participate in and benefit from Defendant's educational offerings because he regressed in communication skills. (Doc. 12, pgs. 7, 16). Plaintiffs have given enough factual details to state a disability discrimination claim under the ADA, Section 504, and the IHRA.

## 2.   Deliberate Indifference

Plaintiffs have also adequately shown deliberate indifference at this stage. Based on the pleadings, Defendant knew R.W.H. would not receive speech-therapy services, harming his federal right to meaningful participation in its special education programs, yet failed to act. (Doc. 12, pgs. 14-17). Plaintiffs showed R.W.H.'s speech-therapy services were terminated in August 2024, but Defendant did not notify Parents until October 2024 or secure virtual speech-therapy services for R.W.H. until January 2025. (Doc. 12, pgs. 4-7). Whether and to what extent Defendant was searching for a speech therapist, as to the question of whether Defendant failed to act, is a factual dispute that will not be decided on the present procedural posture.

Defendant's Motion to Dismiss Plaintiffs' claims of Section 504, ADA, and IHRA violations for failure to state a claim is **DENIED**.

16

### C.  Illinois Civil Rights Remedies Restoration Act Claim

Defendant argues Plaintiff's claims under the Illinois Civil Rights Remedies Restoration Act must be dismissed because Plaintiffs cannot maintain a cause of action under the ADA or Section 504. (Doc. 16, pg. 10) Defendant does not present any other argument for dismissal. (Doc. 16, pg. 10) Because Plaintiffs can maintain a cause of action under both federal statutes, Defendant's argument has no force.

Defendant's Motion to Dismiss Plaintiffs' claims of violations of the Illinois Civil Rights Remedies Act for failure to state a claim is **DENIED.**

### V.      REQUEST TO STRIKE REQUEST FOR PUNITIVE AND EMOTIONAL DISTRESS DAMAGES

Plaintiffs request punitive damages for violations of the ADA and the Illinois Civil Rights Remedies Restoration Act. (Doc. 12, pgs. 15-19, 24). Plaintiffs also request damages for emotional distress for violations of the ADA, IHRA, and Illinois Civil Rights Remedies Restoration Act. (Doc. 12, pg. 24). Defendant seeks to strike Plaintiff's request for punitive and emotional damages under Federal Rule of Civil Procedure 12(f).

Rule 12(f) states: "The court may strike from a pleading…any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "A district court has considerable discretion in deciding a Rule 12(f) motion." *Wilkins v. City of Chicago*, 736 F. Supp. 3d 616, 626 (N.D. Ill. 2024) (quoting *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir. 2009)). A motion to strike should not be granted unless

the relevant language in the Amended Complaint has no possible relation to the controversy and is clearly prejudicial. *See Wilkins*, 736 F. Supp. 3d at 626.

Punitive damages are not available in private causes of action under the ADA. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014) (citing *Barnes v. Gorman,* 536 U.S. 181, 184–85 (2002)). Similarly, damages for emotional distress are not available under the ADA. In *Cummings v. Premier Rehab Keller, P.L.L.C.*, the Court held damages for emotional distress are not recoverable under the Spending Clause antidiscrimination statutes, including the Rehabilitation Act, because funding recipients did not have " 'clear notice'…that they would face such a remedy in private action brought to enforce the statutes at issue." 596 U.S. 212, 230 (2022) (quoting *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006)). In *Cummings*, the Court employs the contract analogy only to statutes passed under the Spending Clause. *Id*. at 225.

The ADA, in contrast to the Rehabilitation Act, is passed under "the power to enforce the [F]ourteenth [A]mendment and to regulate commerce[.]" 42 U.S.C.A. § 12101(b)(4). However, in *Barnes v. Gorman*, the Court made explicit that although the ADA is not Spending Clause legislation, Congress has made clear that the remedies under the ADA are identical to the remedies available under the Rehabilitation Act. 536 U.S. 181, 189 n. 3 (2002); *see also A.W. by & Through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309 (11th Cir. 2024), *cert. denied* 145 S. Ct. 1058, (2025) (finding damages for emotional distress are not recoverable under the ADA after *Cummings*); *Payan v. Los Angeles Cmty. Coll. Dist.*, No. 24-1809, 2026 WL 684094 (9th Cir. Mar. 11, 2026) (finding the same).

18

Accordingly, since punitive damages and damages for emotional distress are unavailable under the ADA, Defendant's motion is **GRANTED** only as to the references to punitive and emotional damages in Plaintiffs' claims under the ADA.

The Illinois Civil Rights Remedies Restoration Act expressly authorizes "all remedies available at law, including, but not limited to, damages for…emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonmonetary losses, and any amount that may be determined by a jury, or a court sitting without a jury[.]" 775 ILCS 60/20. The plain reading of the statute does not support striking references to punitive damages nor damages for emotional distress. For that reason, Defendant's motion is **DENIED** as to the references to punitive and emotional damages in Plaintiffs' claims under the Illinois Civil Rights Remedies Restoration Act.

Lastly, the IHRA allows recovery of "actual damages," including damages for emotional distress. 775 ILCS 5/8A-104(B). Because the plain reading of the IHRA does not support striking references to emotional damages, Defendant's motion is **DENIED** as to references to emotional damages in Plaintiff's claims under the IHRA.

## VI.    CONCLUSION

As explained above, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion to Dismiss and Alternative Motion to Strike Plaintiffs' Amended Complaint. (Doc. 16). The Court **GRANTS** Defendant's request to strike Plaintiffs' prayers for punitive damages and emotional damages under the ADA. (Doc. 16, pg. 11). The Court **DENIES** Defendant's Motion to Dismiss as to Plaintiffs' claims under the

IDEA, Section 504, the ADA, the IHRA, and the Illinois Civil Rights Remedies Restoration Act. The Court **DENIES** the request to strike Plaintiff's prayers for punitive and emotional damages under the Illinois Civil Rights Remedies Restoration Act and IHRA.

**SO ORDERED.**

Dated: March 27, 2026.

s/ *David W. Dugan*

DAVID W. DUGAN
United States District Judge